Argued and submitted May 3, the decision of the Court of Appeals reversed, order of
LUBA reversed, and case remanded to LUBA for further proceedings
August 24, 1995

## Olafur BRENTMAR,
*Petitioner on Review,*

*v.*

## JACKSON COUNTY
and Neil E. Warren,
*Respondents on Review.*

(LUBA 93-208; CA A84956; SC S41765)

900 P2d 1030

Tonia L. Moro, of Law Offices of Martial E. Henault, P.C., Medford, argued the cause and filed the petition for petitioner on review.

Georgia L. Daniels, Jackson County Counsel, Medford, argued the cause and filed the brief for respondent on review Jackson County.

No appearance for respondent on review Neil E. Warren.

John T. Bagg, Assistant Attorney General, Salem, filed a brief on behalf of *amicus curiae* Land Conservation and Development Commission.

GRABER, J.

## GRABER, J.

Petitioner Brentmar sought review of an order of the Land Use Board of Appeals (LUBA) affirming Jackson County's denial of an application for a conditional use permit to operate an agricultural and horticultural school, together with related facilities and commercial activities, in an exclusive farm use (EFU) zone. The Court of Appeals affirmed LUBA's order. *Brentmar v. Jackson County*, 130 Or App 438, 442, 882 P2d 1117 (1994). For the following reasons, we reverse.

Brentmar is the president and a cofounder of the Peace Garden Institute (PGI). PGI applied to the Jackson County Department of Planning and Development for a conditional use permit. PGI sought to operate an agricultural and horticultural school, together with related facilities and commercial activities, in an EFU zone.

The County's hearings officer denied PGI's application. The hearings officer stated that the application requested uses for the land that are, under the Jackson County Land Development Ordinance (LDO) 218.040,[1] conditional uses in an EFU zone. The hearings officer determined that LDO 218.060[2] and LDO 260.040[3] are the

---

[1] LDO 218.040 provides in part:

"The following uses are permitted if in conformance with Sections 218.020 [providing that applications for conditional use permits must comply with the Oregon Agricultural Land Use Policy, ORS 215.243], 218.060 [providing standards required of all conditional uses], and other pertinent sections of this ordinance:

"1)  Commercial activities that are in conjunction with farm use.

"* * * * *

"9)  Public or private schools.

"* * * * *

"11) Small scale energy producing facilities in conjunction with permitted or approved conditional uses."

[2] LDO 218.060 provides in part:

"1)  A conditional use may be approved by the County only when findings can be made that the proposed use meets the standards of Section 260.040 and the proposed use and/or new parcel:

"* * * * *

"D)  Is situated upon generally unsuitable land for the production of farm crops and livestock, considering the terrain, adverse soil or land conditions, drainage and flooding, vegetation, location, and size of tract, unless findings conclusively demonstrate that:

substantive criteria that govern approval of an application for a conditional use permit. The hearings officer found that PGI had failed to furnish sufficient evidence under LDO 260.040(2) to show that the traffic and groundwater impacts of the proposed use of the property would have a minimal effect on the liveability of abutting properties and the surrounding areas and that the proposed use of the property would have a minimal adverse impact on the value of abutting properties and surrounding areas. The hearings officer also found that PGI had not met its burden under LDO 260.040(4) to show that the proposed uses either would provide primarily for the needs of rural residents or would require a rural setting. In addition, the hearings officer found that PGI failed to establish, as required by LDO 218.060(1)(D), (i) that the proposed use would result in a more efficient and effective use of the land and its resources or (ii) that no feasible alternative sites existed that would have less impact on agricultural land. Accordingly, the hearings officer held that the application failed to meet the criteria of LDO 260.040(2). Brentmar appealed the denial of PGI's application to LUBA.[4]

---

 "i) The proposed use will result in a more efficient and effective use of the parcel in view of its value as a natural resource; or

 "ii) No feasible alternative sites in the area exist which shall have less impact on agricultural land."

[3] LDO 260.040 provides in part:

"In order to grant a conditional use permit, the County must make the following findings:

"1) That the permit would be in conformance with the Jackson County Comprehensive Plan for the area, the standards of the district of the Zoning Ordinance in which the proposed development would occur, and the Comprehensive Plan for the county as a whole.

"2) That the location, size, design, and operating characteristics of the proposed use will have minimal adverse impact on the liveability, value, or appropriate development of abutting properties and the surrounding area.

"* * * * *

"4) The proposed use will either provide primarily for the needs of rural residents and therefore requires a rural setting in order to function properly or the nature of the use requires a rural setting, such as an aggregate operation, even though the use may not provide primarily for the needs of rural residents."

[4] Brentmar had standing to appeal the denial to LUBA under ORS 197.830, which provides in part:

LUBA affirmed the County's decision. LUBA stated that the criteria in the LDO must be met before a conditional use permit may be approved and that, because PGI's application failed to satisfy the requirements of the LDO, the County did not err when it refused to issue the requested permit. The Court of Appeals affirmed LUBA's order, and we then allowed Brentmar's petition for review.

The issue before this court is whether a county may enact and apply legislative criteria of its own that are more restrictive than those found in ORS 215.213 and 215.283, the state statutes pertaining to permissible farm-related and nonfarm uses in EFU zones. Brentmar argues that ORS 215.213 and 215.283 require the County to allow a proposed use that complies with the criteria delineated in those statutes. He concludes that the County cannot apply the LDO in this case, because that ordinance contains criteria that are more restrictive than those in ORS 215.213 and 215.283. Brentmar does not argue in this court that PGI satisfied the requirements of the LDO, if it applied.

■   Brentmar's argument requires this court to interpret ORS 215.213 and 215.283. In interpreting a statute, our task is to discern the intent of the legislature. ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). At the first level of analysis, we examine the text and context of the statute. If the legislature's intent is clear from those inquiries, further inquiry is unnecessary. *Id.* at 610-11. If not, we turn next to legislative history. *Id.* at 611-12.

---

"(1) Review of land use decisions or limited land use decisions under ORS 197.830 to 197.845 shall be commenced by filing a notice of intent to appeal with the Land Use Board of Appeals.

"(2) Except as provided in ORS 197.620(1) and (2), a person may petition [LUBA] for review of a land use decision or limited land use decision if the person:

"(a) Filed a notice of intent to appeal the decision as provided in subsection (1) of this section; and

"(b) Appeared before the local government, special district or state agency orally or in writing."

Brentmar filed a timely notice of intent to appeal with LUBA and appeared before the hearings officer both orally and in writing. The County does not challenge his standing.

ORS 215.213 provides in part:

"(1)  In counties that have adopted marginal lands provisions under ORS 197.247 (1991 Edition), the following uses may be established in any area zoned for exclusive farm use:

"(a)  Public or private schools, including all buildings essential to the operation of a school.

"* * * * *

"(2)  In counties that have adopted marginal lands provisions under ORS 197.247 (1991 Edition), the following uses may be established in any area zoned for exclusive farm use subject to ORS 215.296:

"* * * * *

"(c)  Commercial activities that are in conjunction with farm use."

ORS 215.283 provides in part:

"(1)  The following uses may be established in any area zoned for exclusive farm use:

"(a)  Public or private schools, including all buildings essential to the operation of a school.

"* * * * *

"(2)  The following nonfarm uses may be established, subject to the approval of the governing body or its designate in any area zoned for exclusive farm use subject to ORS 215.296:

"(a)  Commercial activities that are in conjunction with farm use."[5]

Brentmar makes two separate but related arguments. First, he argues that ORS 215.213(1) and 215.283(1) require counties to treat the uses listed therein as outright permitted uses and not as conditional uses that can be subject to more stringent local criteria. Second, Brentmar argues

---

[5] ORS 215.296, referred to in ORS 215.213(2) and 215.283(2), provides in part:

"(1)  A use allowed under ORS 215.213(2) or 215.283(2) may be approved only where the local governing body or its designee finds that the use will not:

"(a)  Force a significant change in accepted farm or forest practices on surrounding lands devoted to farm or forest use; or

"(b)  Significantly increase the cost of accepted farm or forest practices on surrounding lands devoted to farm or forest use."

that ORS 215.213(2) and 215.283(2) require counties to apply only those standards listed in ORS 215.296 and prohibit counties from applying more stringent supplemental local standards to the uses listed in ORS 215.213(2) and 215.283(2).[6]

We note at the outset that, for the purpose of our analysis, ORS 215.213(1) and (2) and ORS 215.283 (1) and (2) all contain the same operative wording. Those statutes provide in part that certain uses *"may be established"* in an EFU zone. (Emphasis added.) Brentmar argues that the phrase "may be established" grants permission to individual landowners to establish any of the listed uses, notwithstanding a contrary provision in a county zoning ordinance. That phrase, as it is used in the statutes, does not compel Brentmar's conclusion. The phrase "may be established" indicates that, "[i]n counties that have" established EFU zones, someone is authorized to determine whether the delineated uses will be established. Because the statute uses the passive voice of the key verb "establish," however, the statute does not specify who that someone is. It could be the county, or it could be the property owner. The operative wording of the statutes is ambiguous.

We turn to Brentmar's argument concerning ORS 215.213(2) and 215.283(2).[7] Brentmar argues that counties must allow the uses listed in ORS 215.213(2) and 215.283(2), subject only to the conditions stated in ORS 215.296. As we have just stated above, the pertinent text of ORS 215.213(2) and 215.283(2) is ambiguous; but, the text of ORS 215.296 — which is "context" for this purpose — disposes of Brentmar's argument.

ORS 215.296(10) provides:

"Nothing in this section shall prevent a local governing body approving a use allowed under ORS 215.213(2) or 215.283(2) from establishing standards in addition to those set forth in subsection (1) of this section or from imposing

---

[6] This court has discussed ORS 215.213(1) and (2) previously, in *Craven v. Jackson County*, 308 Or 281, 285-89, 779 P2d 1011 (1989). *Craven* did not resolve the present questions, however.

[7] We begin by addressing Brentmar's second argument because, as we discuss below, ORS 215.213(2) and 215.283(2) serve as context for ORS 215.213(1) and 215.283(1).

conditions to insure conformance with such additional standards."

That subsection specifically gives counties the power to adopt conditions in addition to those set forth in ORS 215.296(1), under ORS 215.213(2) and 215.283(2).

Brentmar also argues that ORS 215.213(1) and 213.283(1) require counties to treat the uses listed therein as outright permitted uses, and not as conditional uses that can be subject to more stringent local criteria. As we have already stated above, the pertinent text of those statutes is ambiguous. Some related provisions of ORS chapter 215 lend support to Brentmar's argument.

Brentmar's argument gains support, first, from ORS 215.213(2) and 215.283(2). As noted, those provisions refer to ORS 215.296, and ORS 215.296(10) specifically permits a county to impose its own conditions on the uses delineated in ORS 215.213(2) and 215.283(2). By contrast, ORS 215.213(1) and 215.283(1) do not refer to ORS 215.296 or incorporate the provisions of ORS 215.296(10). The absence of such a provision in ORS 215.213(1) and 215.283(1) suggests that the legislature did not intend to permit counties to apply additional criteria to the uses listed in ORS 215.213(1) and 215.283(1). Brentmar's reading of ORS 215.213(1) and 215.283(1) would give effect to that distinction.

Brentmar's argument is strengthened when the text of ORS 215.283(1) is contrasted with the text of ORS 215.283(2). ORS 215.283(1) lists uses that "may be established," whereas ORS 215.283(2) lists uses that "may be established, *subject to the approval of the [county].*" (Emphasis added.) Again, Brentmar's reading of ORS 215.283(1) would give effect to that distinction.

On the other hand, other related provisions of ORS chapter 215 detract from Brentmar's reading of the statute.

Brentmar's suggested reading of ORS 215.213(1) conflicts with ORS 215.243(2):

"The Legislative Assembly finds and declares that:

"* * * * *

"(2) The preservation of a maximum amount of the limited supply of agricultural land is necessary to the conservation of the state's economic resources and the preservation of such land in large blocks is necessary in maintaining the agricultural economy of the state and for the assurance of adequate, healthful and nutritious food for the people of this state and nation."

If a county were required to treat the uses listed in ORS 215.213(1) as outright permitted uses, rather than as conditional uses that can be subject to more stringent local criteria, the statutory policy of ORS 215.243(2) easily could be rendered a nullity. A county would be unable to prevent all the property owners in an EFU zone from using their land exclusively for the construction and maintenance of private schools, for example. Accordingly, under Brentmar's reading of the statute, no farming necessarily need occur in an EFU zone. However, such a result would not comport with the legislative policy goal of "[t]he preservation of a maximum amount of the limited supply of agricultural land * * * necessary to the conservation of the state's economic resources."

Finally, Brentmar's proposed reading also conflicts with ORS 215.448(1), which provides:

"The governing body of a county or its designate may allow, subject to the approval of the governing body or its designate, the establishment of a home occupation in any zone, including an exclusive farm use or forest zone, *that allows residential uses*, if the home occupation [meets a series of delineated conditions]." (Emphasis added.)

ORS 215.213(1)(e) provides that dwellings and nonresidential buildings "may be established" on real property in an EFU zone.[8] The emphasized phrase in ORS 215.448 indicates a legislative recognition that not all counties may decide to allow residential uses in an EFU zone. Yet, counties would

---

[8] ORS 215.213(1)(e) provides that one of "the following uses [that] may be established" in an EFU zone is:

"A dwelling on real property used for farm use if the dwelling is:

"(A) Located on the same lot or parcel as the dwelling of the farm operator; and

"(B) Occupied by a relative, which means grandparent, grandchild, parent, child, brother or sister of the farm operator or the farm operator's spouse, whose assistance in the management of the farm use is or will be required by the farm operator."

not have that freedom if we were to accept Brentmar's proposed reading of ORS 215.213(1). The phrase "that allows residential uses" would be unnecessary if the legislature had intended to *require* all counties to permit outright the residential uses listed in ORS 215.213(1)(e).

■    In summary, the text and context of ORS 215.213(1) and 215.283(1) do not make the legislature's intent clear. That being so, we turn next to legislative history. If the legislative intent is clear from consideration of the text, context, and legislative history, then this court interprets the statute to have the meaning so determined, and our inquiry proceeds no further. *PGE*, 317 Or at 612.

ORS 215.213 first was enacted by the legislature in 1963. Or Laws 1963, ch 577, § 3, & ch 619, § 1a.[9] ORS 215.213 (1963) provided:

"The following nonfarm uses *may be established* in any area zoned under ORS 215.010 to 215.190 for farm use:

"(1)    Public or private schools.

"(2)    Churches.

"(3)    Golf courses.

"(4)    Parks, playgrounds or community centers owned and operated by a governmental agency or a nonprofit community organization.

"(5)    Utility facilities necessary for public service." (Emphasis added.)

That provision allowed for the establishment of certain "nonfarm uses" within farm zones. That statute also contained

---

[9] The bill that became ORS 215.213 was passed by both houses of the 1963 legislature as separate bills. House Bill 1230 contained the provision at issue in this case and was signed by the governor on June 19, 1963. Or Laws 1963, ch 577, § 3. Senate Bill 129 also contained the provision at issue in this case, and it was signed by the governor on June 24, 1963. Or Laws 1963, ch 619, § 1a. Immediately following the text of ORS 215.213 (1963) is the following notation, entered by the Reviser of Statutes:

"Section 3, chapter 577, and section 1a, chapter 619, Oregon Laws 1963 have been compiled as ORS 215.213 because they were virtually identical. Section 3, chapter 577, used the term 'properties' instead of 'facilities' in *subsection (5)*."

We have reviewed the legislative history of HB 1230 and SB 129. In that history, there is no indication of why each chamber of the legislature passed the same provision but in a different bill.

the phrase "may be established," which is at issue in this case. We have reviewed the legislative history surrounding the passage of that statute. That history does not reveal whether the legislature intended to allow outright the uses delineated in ORS 215.213 (1963) or whether the legislature instead intended to allow counties to apply additional criteria to those uses when it used the phrase "may be established" in the statute.

In 1973, the legislature amended ORS 215.213. Or Laws 1973, ch 503, § 4. Those amendments were passed as section 4 of Senate Bill 101. When it enacted SB 101, the legislature did two things to ORS 215.213 that are pertinent to our discussion. First, the legislature recodified the previous version of ORS 215.213 as ORS 215.213(1) and modified the list of uses delineated therein. Subsection (1) uses included public and private schools, churches, and the "propagation or harvesting of a forest product." Second, the legislature added two new subsections to the statute. The addition of subsection (2) is pertinent to our discussion. Subsection (2) provided in part:

> "The following nonfarm uses may be established, *subject to the approval of the governing body of the county*, in any area zoned * * * for farm use[.]" (Emphasis added.)

Subsection (2) uses included "commercial activities that are in conjunction with farm use," golf courses, parks, and playgrounds. As our discussion below shows, the legislative decision to delineate certain uses as subsection (1) uses and others as subsection (2) uses is pertinent to our analysis.

After being introduced on the Senate Floor, SB 101 was referred to the Senate Revenue Committee. A subcommittee of the Revenue Committee met a number of times to work out the details of the bill. At the first meeting, the subcommittee simply went through SB 101 to understand the scope of the bill and its provisions. The version of section 4 contained in the bill referred to that subcommittee stated in part:

> "The following nonfarm uses may be established in any area zoned under ORS 215.010 to 215.190 for farm use:
>
> "* * * * *

"(2) Public, semipublic and community uses that provide direct service to the local community, including but not limited to public and private schools, churches, golf courses, and parks, playgrounds or community centers owned and operated by a governmental agency or nonprofit community organization[.]"

Members of the subcommittee discussed the meaning of that provision. *See* Tape Recording, Subcommittee of Senate Revenue Committee, April 23, 1973, Tape 34, Side 1 at 72-102 (discussion among Legal Counsel Steven Hawes, Subcommittee Chair Senator Atiyeh, and Senator Hoyt as to the meaning of proposed section 4 of SB 101). Following that discussion, Senator Hoyt asked Hawes what the phrase "may be established" meant as it was used in the bill. Hawes said that the phrase was unclear. *Id.* at 107-15. Senator Hoyt stated repeatedly his view that the phrase "may be established" meant that a county could treat the uses delineated in the statute as conditional uses subject to approval of the county. *Id.* at 107-63. Senator Atiyeh disagreed. He thought that the phrase "may be established" meant that a county *must* permit the uses delineated in the statute. *Ibid.* The subcommittee agreed to "flag" the issue and return to it at a later meeting. *Id.* at 163.

At its third meeting, the subcommittee again addressed section 4 of SB 101. Senator Atiyeh asked Hawes why any modification whatsoever was being made to the language in ORS 215.213 (1963). Tape Recording, Subcommittee of Senate Revenue Committee, May 9, 1973, Tape 37, Side 1 at 322. Hawes explained that the drafters of SB 101 were simply trying to get the wording of the old provision into one sentence. *Id.* at 326. Senator Atiyeh commented that the proposed change "created some kind of confusion, and we can just clarify it by going back to the old language." *Id.* at 328. Later in that meeting, Senators Burns and Hoyt engaged in the following discussion:

"[Sen. Hoyt:] I really like the original [1963] language here, because this again follows my philosophy that we let the counties decide what they want to do. We've got loose enough language that I think they can write their own lists * * * and they can do what the county fathers think they ought to do and yet we haven't precluded it.

"* * * * *

"[Sen. Burns:] * * * Either you want to start enumerating all the activities for all of the state of Oregon, or you want to make some language that [says] 'Such uses as the county commissioner finds clearly incidental and not incompatible with farm use zoning.' " *Id.* at 419-25.

Following that discussion, Senator Atiyeh requested that proposed amendments on that point be prepared for the next subcommittee meeting. *Id.* at 429.

At the next meeting, the subcommittee discussed various proposals to address the issues raised in previous meetings. Senator Atiyeh outlined one such proposal, offered by Edward Sullivan, County Counsel for Washington County. Senator Atiyeh, Hawes, and Sullivan engaged in the following discussion:

"[Sen. Atiyeh:] [Sullivan's proposal] is generally clear, it says you have to create guidelines and let the county decide what goes in.

"[Hawes:] There's a distinction between the way [the counties] are treating [ORS] 215.213 now. [Some] are treating it as a right. The use is permitted within that zone. * * * Marion County and other counties have said the churches, parks, playgrounds, whatever listed in there is a use of right in an exclusive farm use zone. In other words, it's not a conditional use. Other counties do see it as a conditional use. * * *

"* * * * *

"[Sullivan:] * * * My idea behind this was to make a criteria approach rather than a list approach so that if you leave something off, it doesn't invalidate the farm zone.

"* * * * *

"[Hawes:] The only difference is strictly a policy difference: Do you want to have everything a conditional use? * * * What I'm saying is, if you want a conditional use, there's probably no reason for a list. You can just assume that a county authority will do whatever is necessary. * * * If you want the other, and you want to specify what a commercial activity is so that you can have a use of right, in other words without a conditional use or approval of the county, then you probably should either list or somehow specifically limit that commercial activity.

"[Sen. Atiyeh:] There are not enough votes to take care of that now. * * * I want the list. In the meantime, lets talk

about, if we go the list route, which of these definitions of commercial activities do we want, and if we agree on what this is, then we can get back to this when [enough voting members] get here.''

Tape Recording, Subcommittee of Senate Revenue Committee, May 11, 1973, Tape 37, Side 2 at 7-28. The subcommittee then discussed, at length, what uses should be subject to county approval and what uses should be considered "uses of right." Later in the meeting, additional committee members arrived, and the discussion resumed.

"[Hawes:]   We go back to the use of right versus conditional use. If I can make a suggestion. Keep your old language that we restored last time, public/private school, church and golf course, park and playground, and whatever else we're going to retain after we get through with commercial activities and make only your commercial activities a conditional use under the same idea.

"* * * * *

"[Sen. Atiyeh:]   Let me try this on for size. * * * I think *what we ought to do is make two lists* of things. *One of which is what you call a matter of right* kind of situation, the other would allow commercial activities, but not to be assessed at the farm zone value, but could be permitted in there. Is that what you were saying?

"[Hawes:]   I'm saying that seems to be the best compromise in my mind. You say *certain things are of right and you don't need a conditional use permit or approval.* And the other things that you have a question in you mind, you want the counties to have a little latitude, alright, make those subject to approval of the counties. *So that they don't have to get a conditional use permit for a church or a school.* That battle's already been fought.

"* * * * *

"[Sen. Atiyeh:]   Okay, fine with me."

*Id.* at 91-106 (emphasis added).

Discussion in the subcommittee then returned to the topic of what uses should be "as of right" and what uses should be conditional. During that discussion, Senator Hoyt stated that the Attorney General's office already considered the uses in ORS 215.213 to be uses "as of right." *Id.* at 125. After that statement, the following discussion occurred.

"[Hawes:] Again, Mr. Chairman, [there] is a split of authority among counties. Some counties treat these [uses] as outright uses, others treat them as conditional. * * * Different counties treat them in different ways.

"* * * * *

"[Sen. Atiyeh:] The problem, of course, is the use of the word 'may' at the beginning of the language in the first sentence * * * It's been treated by some counties as a provision for conditional use rather than outright use. * * *

"[Sen. Hoyt:] Mr. Chairman, if you would consider a motion, I would like to ask that we have the proper amendment drawn for [ORS] 215.213 to require I guess really all of those uses, that you said, be provided by right. * * *

"[Sen. Atiyeh:] We are going to separate this into two pieces.

"* * * * *

"[Sullivan:] Mr. Chairman, if I might, subsection 7 of section 4 bothers me a little bit. The problem of dwellings and other buildings. This seems to give authority to zone out or limit the use of these building in farm zones. I see these buildings and dwellings as accessories to basic farm use. * * * These things should not be conditional uses or uses which may be permitted. These should be in conjunction with farm use.

"[Sen. Atiyeh:] Well *what we[']re going to do* Ed *is to separate [ORS] 215.213 into two categories*. One of which is the category you've just described. The other is, what's called a conditional use category. And I would agree with you that these dwellings and so forth [are] in the former category." *Id.* at 128-50 (emphasis added).

On May 15, 1973, the subcommittee met for the last time. At that meeting, the subcommittee, apparently without discussion, adopted an amendment to subsection 4 of SB 101 that incorporated the two-category approach discussed at the May 11 meeting. The subcommittee then sent the bill to the full committee with a "do pass" recommendation. On May 29, the full Senate Revenue Committee sent the bill to the Senate with a "do pass" recommendation. Section 4 of SB 101 was approved by both houses of the legislature without substantive amendment.

As the legislative history makes clear, when the legislature adopted the 1973 amendments to SB 101, it intended to create two categories of use. Those distinct categories were codified as ORS 215.213(1) and (2) (1973). Subsection (1) uses were "uses as of right," or uses that a local governing body could not prevent. On the other hand, subsection (2) uses were "conditional uses," or uses that were "subject to approval of the governing body of the county."

Since 1973, ORS 215.213 has undergone numerous modifications. In almost every legislative session, the list of uses delineated in subsections (1) and (2) has changed. However, the two-category system adopted by the 1973 legislature has not been altered. Nor has the operative wording contained in ORS 215.213(1) — "the following uses may be established" — been modified.[10]

After our review of the text, context, and legislative history of ORS 215.213(1), we conclude that the legislature intended that the uses delineated in ORS 215.213(1) be uses "as of right," which may not be subjected to additional local criteria.

In conclusion, under ORS 215.213(1) and 215.283(1), a county may not enact or apply legislative criteria of its own that supplement those found in ORS 215.213(1) and 215.283(1). Under ORS 215.213(2) and 215.283(2), however, a county may enact and apply legislative criteria of its own that supplement those found in ORS 215.213(2) and 215.283(2).[11]

---

[10] In 1983, the legislature enacted ORS 215.283, which addressed uses that may be established in EFU zones in counties that did not amend their comprehensive plans or land use regulations for the designation of marginal lands. Or Laws 1983, ch 826, § 17. That statute also contained a two-category provision of uses "as of right" and "conditional uses." The uses delineated in ORS 215.283(1) and (2) (1983) were essentially identical to the uses delineated in ORS 215.213(1) and (2) (1983). They have remained so. Whenever one of the delineated uses in either statute has changed, the other statute has been modified accordingly. The parties contend, and we agree, that the analysis of the issue presented in this case under ORS 215.213(1) and 215.283(1) is the same.

[11] Jackson County did not argue in this case that Brentmar's proposed interpretation of the statutes would be unconstitutional as applied to a Home Rule county, and we express no view on that question.

LUBA erred when it held that ORS 215.213(1) and 215.283(1) do not require a county to permit the uses delineated therein. LUBA did not err, however, when it stated that the uses allowed by ORS 215.213(2) and 215.283(2) may be subject to more stringent local criteria than those set forth in those statutory provisions. LUBA did not distinguish between subsection (1) and subsection (2) uses. It is not clear, from the record, whether all or part of PGI's application was rejected improperly, because PGI's proposed subsection (1) uses violated the county's LDO. Accordingly, this case must be remanded to LUBA for reconsideration.

The decision of the Court of Appeals is reversed. The order of the Land Use Board of Appeals is reversed, and the case is remanded to the Land Use Board of Appeals for further proceedings.