Argued and submitted July 17, affirmed October 16, 2001

William F. DURIG
and June Wright,
*Petitioners,*

*v.*

WASHINGTON COUNTY
and Townsend Farms, Inc.,
*Respondents.*

2000-185; A114498

34 P3d 169

William R. Joseph argued the cause for petitioners. With him on the brief were John M. Junkin and Bullivant Houser Bailey, PC.

Stark Ackerman argued the cause for respondent Townsend Farms, Inc. With him on the brief was Black Helterline, LLP.

No appearance for respondent Washington County.

Before Edmonds, Presiding Judge, and Kistler, Judge, and Van Hoomissen, Senior Judge.

VAN HOOMISSEN, S. J.

**VAN HOOMISSEN, S. J.**

Petitioners seek review of a Land Use Board of Appeals (LUBA) final order upholding a Washington County hearings officer's approval of a request to construct seasonal farmworker housing on land zoned for exclusive farm use (EFU). We affirm.

We take the facts from LUBA's opinion. Respondent Townsend Farms, Inc. (respondent), the applicant for the housing, operates a commercial farm. It sought and obtained a permit to construct seasonal farmworker housing on an EFU zoned parcel in Washington County. The approval allowed siting 33 manufactured dwellings to house about 391 seasonal full-time workers and nonworking family members. An existing dwelling on the property would house additional persons connected with the farm operation. The approval limits the total number of occupants at any one time to 425 persons.[1]

In their first two assignments of error, petitioners attack LUBA's resolution of the question of "need" for additional seasonal farmworkers and for housing those workers on the property in question. Petitioners' first assignment of error addresses LUBA's affirmance of the county's finding of a need for seasonal farmworkers under a provision of the Washington County Community Development Code (CDC). In their second assignment of error, petitioners assert that ORS 197.685 requires the county to demonstrate that non-resource land is unavailable before approving seasonal farmworker housing on EFU zoned land. Because LUBA's analysis of the need issue rests on its interpretation of ORS 197.685, we will first discuss LUBA's interpretation of that statute and will then address the applicability of CDC 430-37.2(D)(7), the provision that, petitioners assert, imposes a

---

[1] This is the second time LUBA has reviewed a farmworker housing proposal for the subject property. In *Durig v. Washington County*, 35 Or LUBA 196 (1998) (*Durig I*), LUBA remanded the county's decision on several grounds. We affirmed LUBA's opinion, discussing a single issue involving a county comprehensive plan policy addressing community water systems. *Durig v. Washington County*, 158 Or App 36, 969 P2d 401 (1999). The plan policy at issue in that case was repealed and is not a factor in this case.

requirement for a showing of need as a condition for approving seasonal farmworker housing on EFU zoned land.

ORS 197.685 provides:

"(1)   The availability of decent, safe and sanitary housing opportunities for seasonal farmworkers is a matter of statewide concern.

"(2)   When a need has been shown for seasonal farmworker housing within the rural area of a county, needed housing shall be permitted in a zone or zones with sufficient buildable land to satisfy that need. Counties shall consider rural centers and areas committed to nonresource uses in accommodating the identified need.

"(3)   Subsection (2) of this section shall not be construed as an infringement on a local government's prerogative to:

"(a)   Set approval standards under which seasonal farmworker housing is permitted outright;

"(b)   Impose special conditions upon approval of a specific development proposal; or

"(c)   Establish approval procedures.

"(4)   Any approval standards, special conditions and procedures for approval adopted by a local government shall be clear and objective and shall not have the effect, either in themselves or cumulatively, of discouraging needed housing through unreasonable cost or delay."

Petitioners contend that LUBA erred in concluding that ORS 197.685(2) does not require an alternative site analysis before an application for seasonal farmworker housing may be approved on EFU zoned land. They argue that the statutory requirement to consider "rural centers and areas committed to nonresource uses" extends to such applications. Petitioners assert that LUBA agreed with that view in its opinion in *Durig I.* In that case, LUBA explained that ORS 197.685(2) requires the county to consider rural centers and areas committed to nonresource uses when accommodating a claimed need for seasonal farmworker housing. *Durig I*, 35 Or LUBA at 208.

In this case, LUBA revisited its prior interpretation of the statute. LUBA concluded that the crux of petitioners' argument is the relationship between ORS 215.213(1)(r)[2] and ORS 197.685. ORS 215.213(1)(r) lists "[s]easonal farmworker housing as defined in ORS 197.675"[3] as a use that "may be established in any area zoned for exclusive farm use." LUBA determined that it was unclear from the language of ORS 197.685 and ORS 215.213(1)(r) whether ORS 197.685 establishes obligations to be fulfilled through county legislation or whether that statute mandates criteria that must be applied when considering individual seasonal farmworker housing applications. LUBA determined that, under *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993), it was appropriate to look to legislative history to answer the ambiguity that it found in those statutes.

LUBA concluded that ORS 197.685 is intended to impose a legislative duty

"to consider non-EFU-zoned lands to provide land that would *supplement* seasonal farmworker housing allowed outright on EFU-zoned land under ORS 215.213(1)(r) and 215.283(1)(r), rather than as a precondition of approving such housing on EFU-zoned land." *Durig v. Washington County*, 40 Or LUBA 1, ____ (2001) (slip op at 9-10) (emphasis in original) (*Durig II*).

Under LUBA's interpretation, the duty to consider "rural centers[4] and areas committed to nonresource uses" does not apply when considering individual requests to site seasonal farmworker housing on EFU land. LUBA stated that the possibility that the proposed use could be accommodated in a rural center or in an area committed to nonresource uses was

---

[2] ORS 215.213 addresses uses on EFU land in counties that adopted "marginal lands" provisions under ORS 197.247 (1991). ORS 215.283 addresses uses on EFU lands in counties that did not adopt marginal lands provisions. The uses permitted in ORS 215.213(1) parallel those permitted in ORS 215.283(1), and our discussion of the uses permitted under ORS 215.213(1) applies equally to ORS 215.283(1).

[3] ORS 197.675(2) defines "seasonal farmworker housing" to mean "housing limited to occupancy by seasonal farmworkers and their immediate families which is occupied no more than nine months a year."

[4] We understand the legislature's use of the term "rural center" to mean commercial centers within otherwise rural areas. *See, e.g., DLCD v. Marion County*, 23 Or LUBA 619 (1992); *1000 Friends of Oregon v. Douglas County*, 4 Or LUBA 148 (1981).

not a basis for denial of respondent's application. Accordingly, LUBA rejected petitioners' first assignment of error.

LUBA's determination was limited to stating that ORS 197.685 addresses county legislative matters and is not intended to control individual applications to place seasonal farmworker housing on EFU land. In indicating that ORS 197.685 was intended to supplement the grant of seasonal farmworker housing as an outright permitted use on EFU land under ORS 215.213(1)(r) and ORS 215.283(1)(r), LUBA suggested, but did not expressly hold, that ORS 197.685 does not apply to such housing in EFU zones. Because we believe that the relationship among ORS 197.685, ORS 215.213(1) and ORS 215.283(1) is critical to answering petitioners' assignments of error, we proceed to review the relationship among those statutes.

■ We do not share LUBA's belief in the necessity of departing from the text and context of the statutes governing seasonal farmworker housing. The text and context of ORS 197.675 through ORS 197.685 do not address the placement of seasonal farmworker housing in EFU zones. The statutes articulate the policy that there will be "adequate agricultural labor accommodations commensurate with the housing needs of Oregon's workers that meet decent health, safety and welfare standards." ORS 197.677. Under ORS 197.685(2), when a need for seasonal farmworker housing is shown, local governments are required to permit such housing "in a zone or zones with sufficient buildable land to satisfy that need." ORS 197.685(2). As noted, this requirement directs consideration of placing of such housing in *other than* EFU zones.[5] Specifically, the legislation requires counties to consider "rural centers and areas committed to nonresource uses in accommodating the identified need." *Id.* Land devoted to such nonfarm uses is not zoned for exclusive farm use. *See* ORS 215.203, ORS 215.213 and ORS 215.283.

As part of the law creating ORS 197.675 to ORS 197.685, the legislature also amended ORS 215.213(1) and

---

[5] We might speculate that, if the legislature had found that the need was satisfied by permitting seasonal farmworker housing in EFU zones under ORS 215.213(1) and ORS 215.283(1), it would not have announced and provided for the need in a separate statute.

ORS 215.283(1) to include "seasonal farmworker housing as defined in ORS 197.675" as an outright permitted use. Or Laws 1989, ch 964, §§ 10, 11. The text and context of ORS 197.685, including the text of ORS 215.213(1)(r) and ORS 215.283(1)(r), make evident a legislative intent to make seasonal farmworker housing in EFU zones a permitted use and, in addition, to require counties to permit the use in other zones should there be a need for such housing and buildable land on which to site it.[6]

ORS 197.685(3) protects county authority to set approval standards, impose special conditions and establish approval procedures for seasonal farmworker housing. ORS 197.685(2) and ORS 197.685(3)(a) together require counties to allow, when a need is shown, seasonal farmworker housing on non-EFU zoned land, specifically on land in "a zone or zones with sufficient buildable land" to satisfy the need, and, further, to set out conditions of approval and standards and procedures to facilitate and control the use. However, that extensive authority to apply conditions of approval does not apply to seasonal farmworker housing on EFU zoned land.

We find support for our reading of ORS 197.685 in ORS 215.213(1)(r) and ORS 215.283(1)(r). ORS 197.675 to ORS 197.685 respond to a perceived need for adequate seasonal farmworker housing on other than EFU zoned land. In *Brentmar v. Jackson County*, 321 Or 481, 496, 900 P2d 1030 (1995), the Supreme Court said that "the legislature intended that the uses delineated in ORS 215.213(1) be uses 'as of right,' which may not be subjected to additional local criteria." The court warned that "a county may not enact or apply legislative criteria of its own that supplement those found in ORS 215.213(1) and 215.283(1)." *Id*. Consistently with *Brentmar*, we find nothing in ORS 197.675 to ORS

---

[6] LUBA was correct to the extent that it viewed the directives in ORS 197.685(2) as most easily understood to be about county legislation. That is, the language in the statute shows a legislative intent to require counties to provide for the housing as an element of their zoning ordinances. We will not foreclose, as did LUBA, an interpretation of the statute as directing counties, on a case-by-case basis, to permit seasonal farmworker housing in any existing zone that has sufficient buildable land to accommodate the use. The two interpretations need not be mutually exclusive. Because we determine that ORS 197.685 does not apply to this case, we leave the question of whether the statute applies in the absence of county zoning permitting seasonal farmworker housing to a future case.

197.685 suggesting any legislative intent to give counties greater authority over seasonal farmworker housing permitted in EFU zones than was recognized in *Brentmar*. ORS 197.675 to ORS 197.685 respond to a perceived need for adequate seasonal farmworker housing on other than EFU zoned land.

We conclude that LUBA was correct in rejecting petitioners' assertion that ORS 197.685 requires consideration of alternative sites, that is, sites other than on EFU zoned land, for placement of seasonal farmworker housing. ORS 197.675 to 197.685 do not apply to requests to place the use on EFU zoned land.

We turn to the county's application of the proposed seasonal farmworker housing request. CDC 430-37.2(D) provides, in part:

> "Dwelling in conjunction with farm use where an additional farm related dwelling(s) is (are) necessary for full time help. Subsequent to or concurrently with the approval of a farm related dwelling pursuant to this Code, an additional dwelling or dwellings may be allowed provided there is a finding that the proposed dwelling is customarily required to conduct the proposed farm use considering
>
> "* * * * *
>
> "(7)  * * * if the full time farm help is of a seasonal nature, the following information shall be provided for review:
>
> "(a)  Why seasonal, additional workers are needed;
>
> "(b)  Showing of any long term commitment (crop leases or rentals, etc.);
>
> "(c)  Health Department approval;
>
> "(8)  In the EFU and AF-20 Districts, seasonal farm worker housing shall meet the requirements of ORS 197.685(2)."

Under CDC 430-37.2(D), a dwelling in conjunction with farm use may be allowed on EFU zoned land provided that there is a finding that the dwelling is customarily required to conduct the proposed farm use. We understand the county ordinance to reflect the policy that seasonal farmworker housing is a

variety of "dwelling in conjunction with farm use," which is a permitted use under ORS 215.213(1)(g).

The parties in this case treat the cited provision as applicable to respondent's request for approval to place seasonal farmworker housing on its property. They also treat the provision as one requiring a showing of need for additional seasonal farmworkers, and they regard that showing as a necessary part of a conclusion that the requested seasonal farmworker dwellings are dwellings "in conjunction with farm use" and, therefore, acceptable under CDC 430-37.2(D). The county hearings officer, the parties and LUBA do not explain the source of this county requirement or its relationship to ORS 215.213(1)(r), which makes seasonal farmworker housing an outright permitted use on EFU zoned land. They also do not discuss whether the requirements in CDC 430-37.2(D) represent the kind of local approval criteria that the Supreme Court in *Brentmar* said counties were prohibited from adopting and applying to the permitted uses in ORS 215.213(1) and ORS 215.283(1). Because the parties and LUBA have not discussed those issues, we will not address them here save to caution that our opinion should not be viewed as one upholding application of CDC 430-37.2(D) to the respondent's proposal here.

The hearings officer addressed the need for additional workers and concluded that respondent had established the required need. He identified CDC 430-37.2(D) as a provision allowing "additional dwellings in conjunction with farm use where such dwellings are necessary for full-time help and customarily required to conduct the proposed farm use considering the factors specified in the section." The hearings officer then proceeded to find a need for the workers based on the historical need for workers during the year 2000 and an Oregon State University Experiment Station report that calculated that need. Specifically, the evidence showed that more than 700 workers were employed during the year 2000 and that respondent intends to continue its operation at similar levels. Additional evidence from the Oregon State University report showed a need for 590 workers. The report calculated the need by taking the average number of workers per acre for commercial strawberry operations in Oregon and

applying that figure to the acres of strawberries being farmed by respondent.

The hearings officer continued by reviewing the housing available to respondent and found that, because of the loss of housing at one of its facilities, the "Pumpkin Ridge" camp, respondent "will have a demonstrated need for housing for at least 480 workers, which does not include accompanying family members." He concluded that respondent had addressed "the applicable criteria in CDC 430-37.2(D) and is requesting dwellings that are necessary and customarily required to conduct the proposed use considering the relevant factors."

Petitioners attack LUBA's conclusion that the hearings officer's "needs" determination was supported by substantial evidence. Petitioners argue that LUBA's conclusion in *Durig I* that no need had been demonstrated for a request for 407 seasonal farmworkers should apply to the instant case. They assert that the application considered in *Durig I* was nearly identical to the one at issue here. In addition, petitioners characterize the information about acreage in production and the productivity of the acreage as flawed.

Respondent points out that petitioners do not challenge the evidence that respondent's controller furnished about the actual number of seasonal farm workers employed during the 2000 summer season. Also, respondent asserts that petitioners do not challenge the process or formula used in the Oregon State University report addressing the per-acre need for workers to farm strawberries.

LUBA's opinion explains the difference between its former ruling about the county's failure to demonstrate a need for workers and its present view that the need was demonstrated here. LUBA said that in *Durig I* respondent admitted that 130 of the 407 requested workers were needed for future, speculative purposes. *See Durig I*, 35 Or LUBA at 207. LUBA said that the evidence supporting the hearings officer's decision here was evidence that a reasonable person could rely on in reaching a decision. That is, the evidence met the definition of "substantial evidence." *See City of Portland v. Bureau of Labor and Ind.*, 298 Or 104, 119, 690 P2d 475 (1984). LUBA also noted that the application before it in the

present case was not the same application that it had considered in *Durig I*. LUBA rejected any notion that its ruling in *Durig I* governed the present controversy.

■  LUBA considered the evidence in the record on the issue. We review petitioners' charge to determine whether LUBA applied the correct standard, not to determine, ourselves, whether the order is supported by substantial evidence. *See Von Lubken v. Hood River County*, 133 Or App 286, 289, 891 P2d 5 (1995); *Cusma v. City of Oregon City*, 92 Or App 1, 6, 757 P2d 433 (1988). We are satisfied that LUBA applied the correct standard.

Petitioners attack the evidence about availability of housing at respondent's "Pumpkin Ridge" camp. They claim that LUBA failed in its substantial evidence review of the county's decision, not only because LUBA did not address the matter but also because respondent has other available land for farmworker housing.

LUBA did not address petitioners' substantial evidence claims other than those challenging the evidence regarding the need for workers. LUBA justified its passing over this and other evidentiary issues with the following explanation:

> "Petitioners assert numerous other arguments that challenge the hearings officer's findings. However, most of those arguments concern whether there is a need to house seasonal farmworkers *on the subject property* rather than a need for the labor of seasonal farmworkers generally. Given our disposition of the second assignment of error below, such arguments do not provide a basis for reversal or remand."[7] *Durig II*, 40 Or LUBA at _____ (slip op at 4) (emphasis in original).

Although LUBA's disposition of petitioners' arguments is somewhat cryptic, we understand that it took this action because it believed that the only relevant need question under the county code is whether there is a need for additional workers. CDC 430-37.2(D) does not require a showing

---

[7] LUBA's reference to the "second assignment of error below" is to its disposition of petitioners' assertion that ORS 197.685 requires an alternative site analysis before approval of seasonal farmworker housing on EFU zoned land.

of need for a particular parcel of property or impose a require-ment that the applicant justify placing seasonal farmworker housing on a particular parcel. The county ordinance requires a statement of why additional workers are needed. CDC 430-37.2(D)(7)(a). Under the ordinance, whether the "Pumpkin Ridge" site is available to address the need for additional seasonal farmworkers is not relevant to that inquiry. We find no fault with LUBA's disposition.

Petitioners' third and fourth assignments of error address the water supply for the proposed housing. CDC 423-11 provides:

"All development shall be required to have an adequate water supply. Adequacy shall include:

"1.   Adequate supply for use prior to issuance of a building permit (see Section 501-5.1 Critical Services).

"2.   Outside the UGB, when any Special Use of Article IV will require an amount of water in excess of what would normally be used if the property were developed for rural homesites, the following information:

   "(A)   An explanation of how the water will be supplied; and

   "(B)   An explanation of the potential impact of the proposed water system on the surrounding properties.

   "(C)   Approval of a subdivision outside the UGB pro-posing a community water supply shall be subject to the provisions of Section 423-11.2 A and B."

LUBA found that an existing well serves a dwelling presently on the property. The same well will provide water for the proposed housing. LUBA noted that ORS 537.545(1)(d) provides that groundwater use for single or group domestic purposes in an amount not exceeding 15,000 gallons per day is exempt from the requirement to obtain a state groundwater permit. The county's hearings officer found that the use here would not exceed 15,000 gallons per day, but, because of the possibility that the limit would be exceeded, he required that water use be monitored. Should the limit be exceeded, the hearings officer required "either proof that a water right permit is not required, proof that a

permit has been obtained, or an agreement with the Oregon Water Resources Department (OWRD) to determine whether a permit is required."[8]

The hearings officer also addressed CDC 423-11.2, which requires an explanation of the potential impact of the proposed water system on surrounding areas if water usage will exceed 15,000 gallons per day. While the hearings officer did not find CDC 423-11.2(B) applicable, he concluded that testimony from respondent's water consultant to the effect that the project would not have an adverse impact on the other wells in the area, constituted "an impact analysis." LUBA agreed.

On review, petitioners reject the hearings officer's use of conditions as a satisfactory substitute for a finding that a groundwater permit could be obtained. Petitioners also reject LUBA's view that the evidence supports the hearings officer's conclusion that no permit was needed, because the usage would be below 15,000 gallons per day.

■■ As noted, review of a LUBA determination of substantial evidence is confined to the question of whether LUBA employed the correct standard. *Cusma*, 92 Or App at 6. Petitioners ask us to weigh the evidence and find it lacking.[9] LUBA treated respondent's evidence as something that a reasonable person could accept as valid. We are presented with no persuasive reason why we should overturn LUBA's determination.

Petitioners also challenge LUBA's affirmance of the hearings officer's use of conditions as a means of ensuring

---

[8] The condition is under a portion of the order addressing matters to be satisfied before issuance of building and placement permits. It provides that, before the issuance of a building permit, the applicant shall submit to the Land Development Services Division:

"Evidence of a water right permit for the well(s) serving the site, from the Oregon Water Resources Department (OWRD). *Alternatively*, provide evidence one is not required, or evidence of an agreement with OWRD for determination of whether a water right is required. (Contact the Washington County Watermaster, 846-4881.) (Section 423-11)" (Emphasis in original.)

[9] "Substantial evidence" is a standard of review. A decision may be supported by substantial evidence even if it is not the same decision that a reviewing court would make on the same evidence. *Younger v. City of Portland*, 305 Or 346, 359, 752 P2d 262 (1988).

water availability. Petitioners believe that the water usage will exceed 15,000 gallon per day and, as a consequence, that respondent will have to obtain a groundwater use permit from the OWRD. They argue that respondent must demonstrate the feasibility of obtaining a groundwater use permit.

LUBA noted that petitioners appeared to claim that the hearings officer improperly delegated the decision on feasibility of obtaining a groundwater use permit to the OWRD. LUBA stated that petitioners had not raised that issue before the county and so were precluded from raising it before LUBA. ORS 197.763(1). We note that petitioners' brief before LUBA did not assert that the hearings officer erred in his conditioning approval on, alternatively, a demonstration that a water use permit was not required, on obtaining a permit, or on entering into an agreement with the OWRD to determine whether a permit was required. Because the issue was not before LUBA, we will not entertain that argument here.[10]

In their fifth and sixth assignments of error, petitioners contend that LUBA erred in agreeing with the hearings officer that CDC provisions governing the siting of manufactured dwellings are not applicable in this case. They argue that respondent failed to demonstrate the feasibility of obtaining the approvals or permits necessary to place manufactured dwellings on the subject property. They further argue that, as a consequence, the hearings officer should not have approved the application.

The hearings officer's conclusion that CDC provisions governing manufactured dwellings did not apply here rests on his view that manufactured dwelling park standards

---

[10] Respondent adds that the hearings officer's condition of approval regarding possible groundwater use only requires the applicant to follow state procedures for using water and requires a permit be obtained if one is needed. We note that CDC 423-11.1, requiring an adequate supply of water before issuance of a building permit, lends itself to the kind of condition that the hearings officer imposed. That is, because the adequacy of the water supply is a mandatory requirement at the time of issuance of a building permit and not before that time, it is not unreasonable to interpret the code to permit attaching conditions to the approval to ensure that the water supply will, in fact, be available when the permit is issued. In this case, the county hearings officer found the water supply adequate (that is, it will supply up to 15,000 gallons per day) *and* he attached conditions to ensure adequacy should the facts underlying the approval prove mistaken. We see no error in this process.

were intended to apply only in urban areas. He regarded the use of manufactured dwellings for seasonal farmworker housing as very different from the use of manufactured dwellings for full-time residences in a manufactured dwelling park. LUBA agreed.

CDC 430-77 defines a manufactured dwelling park as

"a parcel of land under single ownership on which two (2) or more manufactured dwellings are occupied as residences. The manufactured dwelling sites are usually rented."

ORS 446.003(32) defines a mobile home park as

"any place where four or more manufactured structures are located within 500 feet of one another on a lot, tract or parcel of land under the same ownership, the primary purpose of which is to rent space or keep space for rent to any person for a charge or fee paid or to be paid for the rental or use of facilities or to offer space free in connection with securing the trade or patronage of such person."

Petitioners argue that those provisions apply to the seasonal farmworker dwelling application here.

Respondent points out that, under ORS 197.675(2), seasonal farmworker dwellings must be unoccupied for at least three months of the year. In addition, neither ORS 215.213(1)(r) nor ORS 197.685 limits the type of dwelling used to fulfill the need for seasonal farmworker housing (other than the policy that "decent, safe and sanitary housing opportunities for seasonal farmworkers is a matter of state-wide concern"). ORS 197.685(1). Respondent also notes that manufactured dwelling parks are not allowed in EFU zones and argues that the fact that seasonal farmworker housing will consist of manufactured dwellings does not somehow turn the housing into a manufactured dwelling park. We agree.

The authority to provide seasonal farmworker housing does not include a specification controlling the kind of dwelling used to fulfill the need for such housing. Seasonal farmworker housing is, nonetheless, distinguishable from permanent occupancy housing. The legislature has expressed its view that adequate seasonal farmworker housing is

needed and should not be subject to standards that would have the effect of discouraging such housing through unreasonable cost or delay. *See* ORS 197.685(4). Moreover, nothing in ORS 215.213(1)(r) places any limit on the kind of housing used to supply seasonal farmworker housing. We find no reason to interpret statutes governing permanent occupancy dwellings normally associated with residential use to be applicable to a singular variety of housing for seasonal occupancy for a particular purpose.

Before LUBA, petitioners also challenged the county's treatment of setback, yard and other dimensional requirements. The hearings officer found that the county code required measurement of yard setbacks to be from the property line to the closest building. His interpretation is taken from the language of CDC 106-220, which defines "Yard (Setback)" to mean

> "[a]n open space on a lot or parcel which is unoccupied or unobstructed by buildings or other structures from the ground upward * * *. Required yards shall be measured from the property line, sidewalk or easement for public travel, whichever is closest, to the building line of the lot or parcel a building will be constructed on."

Similarly, a "Yard, Side" is defined as a "yard between a building or structure and the side lot line extending from the front yard to the rear yard." CDC 106-220.3. A "Yard, Front" means a "yard extending the full width of the lot, the depth of which is the minimum distance between the front lot line and a line parallel thereto at the nearest point of a building or structure." CDC 106.220.1 In short, the code's dimensional standards are measured with reference to lot lines, not to structures.

Because he took the measurements with reference to lot lines and to the nearest dwelling unit to the lot line, the hearings officer concluded that the dimensional requirements in CDC 340-8 were met. He concluded

> "that the CDC only requires that the yard setback requirements be measured to the closest building points, not from all separate buildings, and that, as discussed above, the Site Plan shows that these setback requirements have been met."

Petitioners argue that the measurements should be taken from and between each individual building as if each occupied a separate lot. Petitioners make related arguments about the consequences of applying the correct dimensional requirements to the proposed use. For example, they assert that it may be impossible to site all 33 manufactured dwellings on the subject property and that it may be impossible to provide the required 240 cubic-feet of storage per dwelling and the 2,500 square feet of foot play area.

LUBA correctly affirmed the hearings officer's construction of the ordinance. The ordinance is directed at individual dwelling units on individual lots, not at multiple units on a single lot, as is the case here. For the reasons explained above, we affirm.

Affirmed.